UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

KEVIN SHELBY et al.,

                          Plaintiffs,

                                                    **DECISION AND ORDER**
                                                    10-MC-59A
            v.


INGERSOLL-RAND COMPANY,

                          Defendant.

═══════════════════════════════════

## I.      INTRODUCTION

Pending before the Court is a motion by plaintiffs Kevin Shelby, Justin S.

White, Joseph E. Zdarsky, Gerald T. Walsh, Richard Lipsitz, Michael

Weremblewski, David M. Mehalick, and Gunther K. Buerman to quash deposition

and document subpoenas served on them under Rule 45 of the Federal Rules of

Civil Procedure ("FRCP").  Although termed "plaintiffs" for purposes of this

Decision and Order and this miscellaneous civil action, the moving parties really

are non-party attorneys residing in this District who have become the subject of

discovery proceedings in a consolidated case pending before the Hon. Dickinson

R. Debevoise in the United States District Court for the District of New Jersey (the

"New Jersey Court").  *See Nye v. Ingersoll-Rand Co.*, No. 08-CV-3481 (D.N.J.)

(the "New Jersey Case").  Defendant served the subpoenas and wants to

examine portions of plaintiffs' communications and work product because it wants

to defeat allegations of fraud against it by arguing that the plaintiffs in the New Jersey Case relied on legal advice from the plaintiffs here, not on any statements that it made.  Plaintiffs seek to quash the subpoenas served on them on the grounds that they needlessly invade attorney-client and work-product privileges and exceed the scope of rulings that the New Jersey Court issued already concerning identical subpoenas served on similarly situated New Jersey attorneys.

The Court has deemed this matter submitted on papers pursuant to FRCP 78(b).  For the reasons below, the Court grants plaintiffs' motion and denies defendant's cross-motion to compel.

## II.   BACKGROUND

This case is an offshoot of the New Jersey Case, which concerns allegations that defendant tricked a number of its employees into working to maximize the company's value, in exchange for incentives on which it later reneged.  As of early 2000, defendant was a 100% owner of a subsidiary company named Dresser-Rand Company ("Dresser-Rand").  Both defendant and Dresser-Rand are machinery manufacturers, but defendant decided in 2000 to sell Dresser-Rand to diversify its assets.  Defendant wanted the highest sale price that it could obtain for Dresser-Rand, and sought the help of its employees to improve Dresser-Rand's balance sheet.  Specifically, defendant encouraged its employees to improve Dresser-Rand's financial position by offering them

2

participation in an incentive plan called the Ingersoll-Rand Company Dresser-Rand Sale Incentive Plan (the "2000 Plan").  Under the 2000 Plan, participating employees received quantities of arbitrary, stock-like incentive units called Sale Value Units ("SVUs").  These SVUs were not stock shares in themselves and conveyed no ownership interest in defendant.  Nonetheless, employees receiving SVUs could cash them in upon a completed sale of Dresser-Rand and would receive an amount of cash per unit that would depend on the final sale price. Defendant sold a major part of Dresser-Rand on September 5, 2000 for $190 million and sold the rest of it on August 25, 2004 for approximately $1.2 billion.

The New Jersey Case resulted from defendant's surprise reneging of the 2000 Plan the day after the sale of Dresser-Rand, on August 26, 2004.  Allegedly unwilling to pay the amount of money that it now owed its employees under the 2000 Plan, defendant notified its employees on August 26, 2004 that the 2000 Plan had "expired" at an unspecified time prior to the sale of Dresser-Rand. Defendant offered the participating employees a significantly lower amount of compensation under a new plan (the "2004 Plan"), and informed the employees that their options were to accept the 2004 Plan or to receive nothing at all in compensation.  The employees responded by commencing litigation in the New Jersey Court.  Among other claims, the employees were alleging that defendant fraudulently induced them to believe that their stakes in the 2000 Plan were

worthless and that they had to accept the 2004 Plan if they wanted any compensation.

The way in which defendant is defending itself from the fraud allegations in the New Jersey Case led to the filing of this miscellaneous civil action before this Court.  Defendant asserted that its employees would not have relied on any statements from it because they obtained legal advice from attorneys to help decide whether to sign releases from the 2000 Plan and to accept the 2004 Plan. Discovery in the New Jersey Case has uncovered that in September 2004, some employees of defendant exchanged e-mail messages (known in the New Jersey Case as the "Utopia e-mail messages") that contain legal advice from attorneys concerning the 2000 Plan and the 2004 Plan.  Consequently, defendants sought the production of communications that the employees may have had with attorneys regarding the Utopia e-mail messages or any analysis of the 2000 Plan and the 2004 Plan.  In an Order dated December 23, 2009, New Jersey Magistrate Judge Michael A. Shipp ordered the employees "to disclose any communications pertaining to the Utopia email messages, the acceptance of the 2004 Plan and the signing of the release forms."  (Dkt. No. 2-10 at 9 (citation omitted).)  In an Order dated March 2, 2010 that denied reconsideration of the December 23, 2009 Order, Magistrate Judge Shipp clarified "that Plaintiffs are only required to produce the Utopia email messages and communications pertaining to Plaintiffs' decision to accept the 2004 Plan and to sign the release

forms, as relevant to Defendant's ability to defend against Plaintiffs' fraud claims."

(Dkt. No. 2-11 at 4.)  In issuing this clarification, Magistrate Judge Shipp

emphasized that the employees were not obligated to "produce any and all

communications pertaining the [2000 Plan] or 2004 Plan, which do not relate

necessarily to Plaintiffs' decisions to accept the 2004 Plan or to sign release

forms."  (*Id.*)  Through these two orders, Magistrate Judge Shipp made clear to

the parties that defendant was allowed to explore the extent to which defendant's

employees received "go / no go" advice from attorneys regarding the 2004 Plan,

but that any such discovery could not expand into unrelated communications or

into work product never actually conveyed to any employees.

Despite the scope of discovery that Magistrate Judge Shipp defined in the

New Jersey Case, defendant in September 2010 served 15 attorneys in New

York, Texas, Pennsylvania, and New Jersey—including the plaintiffs in this

miscellaneous action—with subpoenas demanding depositions and documents.

Defendant framed its document demands in all 15 subpoenas using identical

language that read as follows:

> 1.    All documents in your possession, custody or
> control—including, but not limited to, any time diaries, billing
> records, electronic mail messages, correspondence and
> memoranda—relating to or reflecting any Plaintiff's
> consideration of accepting and/or decision to accept the 2004
> Plan and/or payment thereunder, including without limitation all
> documents concerning your consideration of such issues,
> advice you provided to any Plaintiff and/or communications
> with any Plaintiff in connection therewith.

    2.      All documents in your possession, custody or control—including, but not limited to, any time diaries, billing records, electronic mail messages, correspondence and memoranda—that identify any individuals with whom you met and/or communicated concerning their acceptance and/or decision to accept the 2004 Plan and/or payment thereunder.

(*E.g.*, Dkt. No. 2-1 at 13.)

The two New Jersey attorneys subpoenaed by defendant moved to quash their subpoenas before the New Jersey Court.  In an Order dated November 19, 2010, Magistrate Judge Shipp granted the motion.  Magistrate Judge Shipp explained again that any prior discovery authorized against the employees was directed specifically to the employees and not to any attorneys whom they may have consulted.  Additionally, Magistrate Judge Shipp emphasized again that any work product that the attorneys generated that never was communicated to any employees remained privileged.  He required that the subpoenas, if re-served, be modified to delete the demand for a deposition and to add the following language:

> Pursuant to an Order entered by the U.S. District Court for the District of New Jersey, the previously served subpoena has been modified as follows:
>
> This subpoena does not require the disclosure of any information, communications, memorandum or other such documents that were not explicitly communicated to your client, including, but not limited to, internal memorandums, time diaries or billing records.
>
> Please note that your deposition is no longer required or permitted by order of the Court.

(Dkt. No. 37-9 at 12.)  In an Order issued on January 25, 2011, U.S. District Judge Debevoise modified Magistrate Judge Shipp's Order slightly by allowing

one-hour telephonic depositions of each New Jersey attorney.  Judge Debevoise

made this modification only because one particular employee had denied

knowing those attorneys even after confronted with documentary evidence

showing otherwise.  In all other respects, however, Judge Debevoise affirmed

Magistrate Judge Shipp's Order.

The Plaintiffs in this miscellaneous action now ask this Court to quash the

same subpoena language that the New Jersey Court already has quashed in its

prior orders concerning the attorneys subpoenaed in New Jersey.  In support of

their motion, plaintiffs assert that the total number of depositions that defendant

seeks in the New Jersey Case will exceed the number permitted by Magistrate

Judge Shipp in a prior scheduling order if these attorney depositions go forward.

More substantively, plaintiffs assert that the subpoenas served on them are

impermissibly broad and would authorize a limitless exploration of work product

regarding the 2000 Plan and the 2004 Plan, along with attorney-client

communications not related to any employee's acceptance of the 2004 Plan.

Plaintiffs assert that such a broad exploration of privileged work product is not

appropriate when defendant has not even established that any of it, especially

documents like time entries and billing records, was ever communicated to

defendant's employees.  In opposition to plaintiffs' motion and in support of its

cross-motion, defendant asserts that even though the New Jersey Court quashed

identical subpoenas issued to similarly situated attorneys in New Jersey,

7

"Defendant respectfully disagrees with the [New Jersey] Judges' position on these subpoenas and believes it arises from a misunderstanding about the circumstances underlying, and nature of, the withheld documents.  Given the New Jersey Court's admitted lack of jurisdiction as to these subpoenas, defendant asks this Court to examine the issues anew."  (Dkt. No. 28 at 6.)

## III.   DISCUSSION

As a preliminary matter, this Court notes that it has jurisdiction over the pending motion to quash.  Under FRCP 45(a)(2)(B), a deposition subpoena must issue "from the court for the district where the deposition is to be taken."  Plaintiffs reside within this District, and the depositions would occur within this District. This Court issued the subpoenas in question on that basis.  As the "issuing court," FRCP 45(c)(3)(A), this Court has the authority to revisit the subpoenas in question as needed.  *But see In re Digital Equip. Corp.*, 949 F.2d 228, 231 (8th Cir. 1991) ("While the Oregon district court initially has exclusive jurisdiction to rule on the [subpoena] objections, it may in its discretion remit the matter to the court in which the action is pending.") (citation omitted); *Westernbank Puerto Rico v. Kachkar*, No. M8-85 X3 (PART1), 07-1606 (ADC-BJM), 2009 WL 856392, at *2 (S.D.N.Y. Mar. 27, 2009) ("On the other hand, there seems to be substantial case law that supports a court's authority to transfer a discovery motion to the district where the underlying litigation is pending.") (citations omitted).

The general standard for quashing subpoenas is straightforward.  "On timely motion, the issuing court must quash or modify a subpoena that . . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . ."  FRCP 45(c)(3)(A)(iii).  With respect to the attorney-client privilege, "the communication from attorney to client must be made for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship.  The communication itself must be primarily or predominantly of a legal character.  The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client."  *Allied Irish Banks, P.L.C. v. Bank of Am.*, 252 F.R.D. 163, 168 (S.D.N.Y. 2008) (internal quotation marks and citations omitted).  With respect to the work-product doctrine, "[t]hree conditions must be met to earn work product protection.  The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative."  *Id.* at 173 (citation omitted).

This Court finds, however, that the rulings that have issued from the New Jersey Court for identical subpoenas served on similarly situated attorneys shifts the analysis to whether the law of the case doctrine applies.  "The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as an intervening change of controlling law, the availability of new evidence,

or the need to correct a clear error or prevent manifest injustice.  Under this

doctrine courts are understandably reluctant to reopen a ruling once made,

*especially when one judge or court is asked to consider the ruling of a different*

*judge or court.*"  *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (emphasis

added) (internal quotation marks and citations omitted).  In the New Jersey Case,

defendant subpoenaed two attorneys in New Jersey who allegedly gave legal

advice to defendant's employees.  The language from those subpoenas matches,

verbatim, the language in the subpoenas at issue here.  The New Jersey Court

already has reviewed the subpoena language at issue and has quashed it after

considering the same arguments that the parties have raised here.  On

substance, this Court happens to agree with the New Jersey Court that

defendant's employees could not have accepted the 2004 Plan in reliance on

attorney-client communications unrelated to it, or in reliance on billing statements,

time entries, and other work product that they never knew existed.  Additionally,

however, the New Jersey Court's ruling on the same subpoena language at issue

here forecloses a "second bite at the apple" before this Court.  *Cf. Ohio Willow*

*Wood Co. v. ALPS South, LLC*, No. 2:05-cv-1039, 2010 WL 3470687, at *2 (S.D.

Ohio Aug. 31, 2010) ("[T]here is really no reason for this Court not to afford the

order of its sister District Court in Florida the comity to which its protective order is

entitled."); *Dushkin Pub. Group, Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335

(D.D.C. 1991) ("As for those documents shielded by the . . . protective order, this

10

court as a matter of comity respects the order issued by the District Court for the Southern District of New York.").

Under these circumstances, this Court declines defendant's invitation to give it a different result on the same subpoena language simply because it did not like the initial result from the New Jersey Court.  The subpoenas at issue, in the form in which they were served, are hereby quashed in their entirety.  If defendant chooses to re-serve any of the subpoenas for documents only then those subpoenas must be modified in the same manner in which the New Jersey Court modified the subpoenas that it reviewed.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court grants plaintiffs' motion to quash (Dkt. No. 1) and denies defendant's cross-motion to compel (Dkt. No. 8).  The Clerk of the Court shall close this case.

SO ORDERED.

_s/ Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: March 24, 2011